J-S37030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE NIEVES, | : | |
| | : | |
| Appellant. | : | No. 186 EDA 2018 |

Appeal from the PCRA Order, December 7, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0007388-2011.

BEFORE:  BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:              **FILED DECEMBER 27, 2019**

Jose Nieves appeals from the order dismissing his petition for relief filed pursuant to the Post Conviction Relief Act.[1]  We affirm.

On May 13, 2011, the victim, William Meyo,[2] stood in an empty lot leaning against Nieves's house.  Meyo saw Nieves exit the house, and walk over to a vehicle.  Meyo had never seen Nieves before, nor was he acquainted with him in any way.  Nieves appeared to be having a disagreement with his girlfriend, so Meyo began to walk across the empty lot away from the house. As Meyo walked away, Nieves came up behind him, and pushed him down

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] In some parts of the record, his name is referenced as "Mayo;" however, "Meyo" appears to be the correct spelling.

onto the ground on a door, which was lying on the ground. Nieves then went back into the house, and Meyo remained on the ground, unable to get up due to paralysis of his left arm from a previous incident. Nieves returned with a pistol in his hand, shouted obscenities at Meyo, and shot him twice in the back of the head, rendering him unconscious. A short time later, Meyo woke up, and was able to walk away. A bystander called for an ambulance, and, while Meyo was being transported to the hospital, he told a police officer what Nieves had done to him and provided the location of the incident.

In 2012, a jury convicted Nieves of attempted murder, aggravated assault,[3] and related charges stemming from the incident. This Court affirmed Nieves's judgment of sentence, and our Supreme Court denied allowance of appeal. **Commonwealth v. Nieves**, 100 A.3d 303 (Pa. Super. 2014) (unpublished memorandum); *appeal denied*, 99 A.3d 925 (Pa. 2014). Nieves filed a timely PCRA petition alleging ineffectiveness of trial counsel. Following an evidentiary hearing, the PCRA court dismissed the petition. Nieves filed a timely notice of appeal.[4] Both Nieves and the PCRA court complied with Pa.R.A.P. 1925.

---

[3] **See** 18 Pa.C.S.A. §§ 2502, 2702(a).

[4] The PCRA court orally dismissed Nieves's petition on December 7, 2017. However, the dismissal order was not docketed. After Nieves filed his notice of appeal, this Court issued a rule to show cause why the appeal should not be quashed as having been taken from an order not entered on the docket. On June 4, 2018, the PCRA court entered an order dismissing the petition *nunc*

Nieves raises the following issues for our review:

1. Whether the PCRA court should have granted relief due to trial counsel's ineffectiveness when consulting and advising [Nieves] regarding his 5th Amendment right to testify?

2. Whether the PCRA court should have granted relief due to trial counsel's ineffectiveness in failing to object to the admission of Demaris Molina's statement?

3. Whether the PCRA court erred by making credibility decisions based on evidence outside the record, *i.e.*, trial counsel's reputation and prior times trial counsel appeared before the court?

Appellant's Brief at 5.[5]

We review an order dismissing a petition under the PCRA:

in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations

omitted).

_____

*pro tunc* on December 7, 2017. Therefore, Nieves's notice of appeal, filed on January 6, 2018, was timely-filed, and we have jurisdiction over this appeal.

[5] In the argument section of his brief, Nieves addresses his issues in a different order; however, for consistency, we will address them in the same order as presented in his statement of questions presented.

When a petitioner alleges trial counsel's ineffectiveness in a PCRA petition, he must prove by a preponderance of the evidence that his conviction or sentence resulted from ineffective assistance of counsel "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Additionally, the petitioner must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotation marks omitted). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

In his first issue, Nieves contends that the PCRA court erred by denying relief on his claim that trial counsel was ineffective for failing to properly advise Nieves regarding his right to testify. Claims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an

accused's right to testify require a defendant to prove either that "counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *See Commonwealth v. Miller*, 987 A.2d 638, 661 (Pa. 2009) (citation omitted).

Nieves concedes that he discussed his right to testify with trial counsel, but claims that, because he is a Spanish-speaker and counsel did not bring a translator, Nieves understood counsel to have stated that it would not be convenient for him to testify on his own behalf at trial. According to Nieves, "[trial counsel] explained that by testifying Nieves would not look good before the judge and that the district attorney would pull out his file and the jury would find out about his previous drug case." Appellant's Brief at 15 (capitalization omitted). Nieves argues that the record does not demonstrate that he knowingly, intelligently and voluntarily decided not to testify since his counsel had no independent recollection of advising him of his right to testify. *Id*. at 16. Nieves further argues that, even if that conversation did occur, there is no evidence that a translator was present. *Id*. Nieves further claims that "the case relied in large part upon the victim's credibility[, and that his] testimony would this have been helpful to the jury in evaluating the same." *Id*.

Here, the PCRA court credited trial counsel's testimony that he advised Nieves of his right to testify, and that Nieves accepted his advice that it would

not be in his best interest to do so. PCRA Court Opinion, 10/18/18, at 3-4; *see also* N.T. PCRA Hearing, 8/24/17, at 45-46. The PCRA court additionally noted that the trial court thoroughly colloquied Nieves regarding his right to testify, and that Nieves confirmed to the trial court that he was aware his constitutional right to testify, he had discussed whether to testify with trial counsel, and that he had decided not to testify on his own behalf. PCRA Court Opinion, 10/18/18, at 5 (citing N.T. PCRA Hearing, 8/24/17, at 25); *see also* N.T. Trial, 6/25/12, at 96-99.

The PCRA court further determined that trial counsel had a reasonable basis for advising Nieves not to testify because, *inter alia*, Nieves provided conflicting statements about his encounter with Meyo, and "[a]ll of these contradictory statements only support trial counsel's concerns that advising [Nieves] to testify would have been a poor strategy because he could have been impeached with these statements." *Id*. at 5. The PCRA court explained its ruling as follows:

> Here, trial counsel informed [Nieves] that he had no *crimen falsi* convictions on his criminal record. However, trial counsel further advised [Nieves] that it would not be in his best interest to testify because he "felt the evidence introduced by [the defense's cross-examination of the Commonwealth's witnesses] damaged the prosecution's case sufficiently" and "whatever cross-examination [of Nieves that] would take place would have only harmed him rather than help him." The record is clear that trial counsel had a reasonable basis for advising [Nieves] not to testify on his behalf.

*Id*. at 4 (footnotes omitted).

As the record supports the PCRA court's determination that trial counsel had a reasonable basis for advising Nieves not to testify, we affirm its ruling that Nieves's first ineffectiveness claim lacks merit.

In his second issue, Nieves contends that the PCRA court erred by denying relief on his claim that trial counsel was ineffective for failing to object to the admission of a statement from Demaris Molina.[6] Nieves claims that, although Ms. Molina did not testify and was not subject to cross-examination, the Commonwealth nevertheless "elicited testimony from Detective Sam Gonzalez which invited the jury to conclude that Ms. Molina identified . . . Nieves as the complainant's assailant." Appellant's Brief at 9. Nieves references the following trial testimony by Detective Gonzalez:

> [The prosecutor]: Detective, did you take a written statement based on your interview with Demaris Molina?
>
> [Detective Gonzalez]: Yes, I did.
>
> [The prosecutor]: And what you've been handed, C-23—
> [Detective Gonzalez]: That's correct.
>
> [The prosecutor]: --is that the document?
>
> [Detective Gonzalez]: It is.
>
> [The prosecutor]: And in addition to taking a written interview from Demaris Molina, was she asked to sign and identify photographs?
>
> [Detective Gonzalez]: Yes, she was and she did.

---

[6] The PCRA court explained that Ms. Molina is the mother of Nieves's child, and that she was at Nieves's home when the altercation with Meyo occurred; however, she did not testify at trial because she could not be located. PCRA Court Opinion, 10/18/18, at 6 n.31, 7.

- 7 -

> [The prosecutor]: And as you sit here today, do you know where Demaris Molina is?
>
> [Detective Gonzalez]: I do not know.

*Id*. at 10-11 (quoting N.T. Trial, 6/25/12, at 76-78). According to Nieves, this was the only substantive testimony elicited from the detective and it "invited the jury to conclude that . . . Molina identified . . . Nieves as the perpetrator," and that she "was intimidated enough into absenting herself from the proceeding." *Id*. at 12. In support of his claim, Nieves points out that trial counsel made no objection when the Commonwealth moved to admit exhibits 1-25 into evidence. *Id*. at 13 n.5 (quoting N.T. Trial, 6/25/12, at 83). Nieves claims that counsel had no strategic basis not to object to the testimony.

In rejecting Nieve's second ineffectiveness claim, the PCRA court found that trial counsel did, in fact, object to Ms. Molina's statement, observing as follows:

> When testifying, Det. Gonzalez merely mentioned about what he did during his investigation (*i.e.*, his course of conduct). As part of his investigation, [Detective] Gonzalez took a statement from Molina and had her identify some photographs. However, the contents of Molina's statement were never made available to the jury. Moreover, **trial counsel objected before the Commonwealth had the opportunity to refer to the contents of Molina's statement**.

*Id*. at 7 (footnote omitted, emphasis added).[7]

_____

[7] Even though the PCRA court specifically noted that Nieves's counsel objected to **the contents** of Ms. Molina's statement before Detective Gonzalez could

Mindful of our standard of review, we conclude that the record supports the PCRA court's determination that Nieves's counsel did object to the admission of Ms. Molina's statement. **See Ford**, 44 A.3d at 1194 (holding that we will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error). While no specific objection to Ms. Molina's statement is indicated in the notes of testimony, the record as a whole nevertheless provides ample support for the PCRA court's determination that Nieves's counsel did, in fact, object to the statement.[8]

First, the statement was not admitted into evidence or provided to the jury. Further, Detective Gonzalez was not permitted to testify as to the content of Ms. Molina's statement, or what or who was depicted in the photographs she was asked to sign and identify. Finally, during its deliberations, the trial court denied the jury's request to see Ms. Molina's statement because it had not been admitted into evidence or provided to them. **See** N.T. Trial, 6/26/12, at 93-94 (where the trial court read the jury's

_____

offer testimony about it, as indicated in the above passage, Judge Bowes inexplicably concludes that the PCRA court made no such finding. **See** Concurring Memorandum, at 2 fn.1.

[8] The fact that the objection is not indicated in the notes of testimony is not dispositive, and does not support a conclusion that no such objection was made. The objection may have been made by trial counsel during an off-the-record discussion with the trial court which took place immediately before Detective Gonzalez was questioned regarding Ms. Molina's statement. **See** N.T. Trial, 6/25/12, at 77.

request to see Ms. Molina's statement, and then denied it because the statement was not in evidence). Accordingly, as the record supports the PCRA court's determination that trial counsel objected to the admission of Ms. Molina's statement, we affirm its determination that Nieves's second ineffectiveness claim lacks merit.[9]

In his final claim, Nieves challenges the PCRA court's credibility determinations. The PCRA court's credibility determinations, when supported by the record, are binding on this Court. *Commonwealth v. Williams*, 196 A.3d 1021, 1027 (Pa. 2018); *see also Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) ("A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts.").

Nieves contends that the PCRA court judge erred by "basing his credibility decisions at least in part on his past dealings with [trial counsel]." Appellant's Brief at 17. Nieves claims that the judge's comments indicate that it relied on evidence outside the record, including his prior experience with

---

[9] Nieves's reliance on *Commonwealth v. Thomas*, 578 A.2d 422 (Pa. Super. 1990), is unavailing as, unlike the instant case, defense counsel in *Thomas* made no objection to the police officer's testimony regarding a conversation with a non-testifying witness. Moreover, whereas in the instant case, Detective Gonzalez was not permitted to testify as to who, if anyone, Ms. Molina identified, the police officer in *Thomas* was permitted to testify that, "as a result of" his conversation with the witness, he prepared an affidavit for an arrest warrant for the defendant. *Id*. at 426.

trial counsel and his reputation. *Id*. at 18. Nieves points to the following statement made by the PCRA court judge at a hearing:

> I know [trial counsel]. He's been around forever. He's been before me many times. And, based on past practices, as well, he's always advised defendants legally, as far as I'm concerned.

Appellant's Brief at 18 (quoting N.T. PCRA Hearing, 12/7/17, at 7). Nieves claims that, "[f]rom this, it is apparent that the [c]ourt based its decision on what he knew of counsel from past practices." *Id*.

The PCRA court rejected Nieves's final claim, for the following reasons: (1) Nieves's credibility was questioned based on conflicting statements he provided which demonstrated that he was not truthful;[10] (2) trial counsel testified that he fully explained to Nieves about his right to testify, and counsel provided a reasonable basis for his advice to Nieves not to testify; and (3) Nieves admitted that he told the trial court that he had discussed the pros and cons of testifying with trial counsel, and explicitly stated that he did not want to testify on his own behalf. *See* PCRA Court Opinion, 10/18/18, at 9.

---

[10] The PCRA court noted that Nieves testified at the PCRA hearing that, had he testified at trial, he would have told the jury that Meyo aggressively approached him, so he grabbed a wrench from the front of his house and then saw Meyo fleeing. PCRA Court Opinion, 10/18/18, at 4 (citing N.T. PCRA Hearing, 8/24/17, at 21). However, Nieves submitted an affidavit to the PCRA court attesting that his trial testimony would have been that he first saw Nieves attempting to steal his car, and then Nieves went inside his house to grab a wrench, and when he came out, Meyo aggressively approached him, and Nieves repeatedly struck Meyo in self-defense. *Id*. (citing N.T. PCRA Hearing, 8/24/17, at 33-34)

As the record supports the PCRA court's credibility determinations, we are bound by them. ***See Williams***, 196 A.3d at 1027. Accordingly, no relief is due on Nieves's final issue.

Order affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Bowes files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/19